## NEW-YORK COMMON PLEAS.

### VAN WYCK agt. HOWARD.

Where the goods of a *guest* are lost at an inn, the loss is presumed to have occurred through *negligence* on the part of the *innkeeper;* which, however, he may rebut by showing that it was the negligence of the guest. An innkeeper is held to the exercise of *extraordinary vigilance* in protecting the property of his guests.

He has a right to make such regulations in the management of his inn as will more effectually secure the property of his guests, and operate as a protection to himself; and it is incumbent upon the guest, if he means to hold the innkeeper to his responsibility, to comply with any regulations that are just and reasonable, when he is required to do so.

But whatever the innkeeper requires to be done by the guest, it must appear that such requisition is in itself reasonable, and that the guest is distinctly informed of what is necessary to be done on his part. Whether the request is made orally or in the form of a printed notice, it should be, in terms, so clear and unmistakable as to leave room for no reasonable doubt as to what was intended. The guest should know precisely what he is to do before he can be chargeable with negligence for not doing it.

A printed notice at the hotel, put up on the door of the room occupied by the guest, was as follows: " Gentlemen are particularly requested to bolt their

Van Wyck agt. Howard.

chamber-doors on retiring for the night, to prevent intrusion from strangers, either by design or mistake, and to lock their doors during the day, and leave the key at the office. They are also cautioned against leaving any money or valuables in their rooms. Packages of value, properly labeled, can be deposited in an iron safe kept in the office."

*Held*, that this notice was insufficient to protect the landlord from liability, where it appeared that his guest had $450 *in his portmanteau*, in his room, and about 7 o'clock P. M., he locked his portmanteau, and quitted his room, locking the door and putting the key in his pocket. He returned at 11 o'clock the same evening, and found the portmanteau broken open, its contents strewn about the room, and the money and his jewelry gone.

This notice may very well have been understood (as it seems it was, in fact) as merely cautioning the guest against leaving money or valuables *loose or exposed about the room*.

An innkeeper's liability is not limited, like that of a carrier of passengers, to the care merely of that species of property which comes under the denomination of *baggage*. If he *receives* his guest and his goods, whether goods, chattels, and movables of any kind or description, he charges himself with their safe keeping—his liability *immediately attaches*.

A traveller, just arrived from Europe, having in his portmanteau $450, in foreign and American gold pieces, is a sum which no court or jury could say is more than is necessary for his ordinary travelling expenses; it would, therefore, come within what is usually known as baggage.

*Special Term, Jan.,* 1856. ·

THIS was an action brought by Van Wyck against Howard, proprietor of the Irving House, to recover the value of the property stolen from one Forbes while he was there as a guest.

A. R. DYETT, *for plaintiff.*
J. E. BURRILL, JR., *for defendant.*

DALY, Judge. The argument at the close of the trial, that the plaintiff might take judgment for the value of the jewelry, ($32,) was an admission of the competency of the witness Forbes; of the sufficiency of the assignment, and a waiver of the objection made to certain questions as leading. The only point, therefore, to be determined is, whether the plaintiff can recover for the money which was lost.

Where the goods of a guest are lost at an inn, the loss is presumed to have occurred through negligence on the part of

the innkeeper, which he may, however, rebut, by showing that it was occasioned by the negligence of the traveller; and in this case it is insisted that Forbes had notice of the fact that an iron safe was kept in the office of the defendant's hotel, in which "packages of value, properly labeled, might be deposited;" that he was guilty of negligence in not giving his money to the defendant or his agent, for deposit in this safe: and it is further insisted that the liability of a hotel keeper extends no further than to the care of such property as comes under the denomination of baggage; and that the money lost in this case formed no part of the baggage of the guest.

It appears that Forbes had $450 in his portmanteau; that about 7 o'clock in the evening he locked his portmanteau, and quitted his room, locking the door, and putting the key in his pocket. He returned at 11 o'clock the same evening, and found the portmanteau broken open, its contents strewn about the room, and the money and jewelry gone. A printed notice or card was pasted on the inside of the door of the room, containing, among other things, the following: " Gentlemen are particularly requested to bolt their chamber-doors on retiring for the night, to prevent intrusion from strangers, either by design or mistake, and to lock their doors during the day, and leave the key at the office. They are also cautioned against leaving any money or valuables in their rooms. Packages of value, properly labeled, can be deposited in an iron safe kept in the office."

The superintendent of the hotel testified that Forbes admitted that he had seen the card posted up on the chamber-door, and read it; but that, as he intended to stay at the hotel but for a few days only, before taking private lodgings, he did not think it worth while to put his valuables in the safe; and that the notice did not caution persons against leaving valuables in their trunks, but only against leaving them about the room. Forbes also testified that he had seen the notice, and to the effect that he regarded it as merely cautioning lodgers not to leave things about their rooms, carelessly—not as warning them against leaving anything in their portmanteaus; and that he did

not think it worth while to put anything down stairs, as it was his intention to leave immediately.

There can be no doubt of the innkeeper's right to make such regulations in the management of his inn as will more effectually secure the property of his guests and operate as a protection to himself, and that it is incumbent upon the guest, if he means to hold the innkeeper to his responsibility, to comply with any regulations that is just and reasonable, when he is requested to do so. (*Richmond* agt. *Smith*, 8 *Barn. & Cres.* 9; *Burgess* agt. *Clements*, 4 *M. & S.* 306.)

In *Sanders* agt. *Spencer*, (3 *Dyer, p.* 266,) the innkeeper told the traveller to lay his goods in packs in a certain chamber within the inn, under a lock and key provided for that purpose, and that he would warrant them safe—otherwise, not.   But the traveller left them in an outer court, from which they were stolen, and it was held that the innkeeper was not responsible. And if the defendant in the present case had notified Forbes that he should not leave any money locked up in his trunk, but should deposit it in the iron safe, kept in the office, it may be that the defendant would not have been responsible for its loss. But the printed notice did not advise Forbes that he was not to leave money locked up in his trunk.   It merely informed him that packages of value, properly labeled, might be deposited in an iron safe, kept in the office, and cautioned him against leaving money or valuables in his room.   This may very well have been understood, as Forbes appears to have understood it, as merely cautioning him against leaving money or valuables loose or exposed about his room.   If the landlord, to enable him the more effectually to secure the property, requires something to be done by the guest, it must appear that what was required was in itself reasonable, and that the guest was distinctly informed of what was necessary to be done on his part. Whether the request was made orally or in the form of a printed notice, it should be in terms so clear and unmistakable as to leave room for no reasonable doubt as to what was intended. The traveller should know precisely what he is to do before he can be chargeable with negligence for not doing it; and as the

notice did not apprize him that he was not to leave money locked up in his trunk, he cannot be regarded as guilty of negligence in so leaving it.

For well-founded reasons of public policy, the innkeeper is held to the exercise of extraordinary vigilance in protecting the property of his guest. If it is lost, the loss is presumed to have arisen from negligence or connivance on the part of the innkeeper, and to overcome that presumption it rests upon him to show that it was occasioned by inexcusable and culpable negligence on the part of the traveller, and this the defendant has not shown.

An innkeeper's liability is not limited, like that of a carrier of passengers, to the care merely of that species of property which comes under the denomination of baggage. The carrier of passengers performs a distinct employment. He undertakes to transport the passenger and his baggage. The baggage is what travellers usually carry with them, or what is essential or necessary to the traveller in the course of his journey. The care of it is incident to and forms a part of the contract for the carriage of the passenger, for which the carrier is compensated by the fare or rate agreed upon. But for anything beyond mere baggage the carrier is entitled to extra compensation; it is not embraced or compensated for in the fare paid by the passenger; and if he has anything with him, not coming under the denomination of baggage, of which the carrier is not advised, or for the carriage of which he receives nothing, it is at the risk of the passenger, and the carrier is not liable in the event of its loss. But the occupation of the innkeeper is different. He keeps a place of entertainment for the reception of all who travel, whether in their own vehicle or otherwise, in which the farmer carrying his produce to market, the trader vending his wares about the country, the traveller with simply his baggage, or the passenger journeying on foot, equally find accommodation; and where provision is made, not merely for the personal entertainment of the guest, but for the housing and safe keeping of the property he brings with him, while he rests or reposes at the inn.

Van Wyck agt. Howard.

In modern times great changes have taken place in respect to the nature of the accommodation afforded by inns. Anciently, the inn was a kind of warehouse or hotel, in which travellers in journeying from one part of the country to the other for the purposes of trade or commerce, found a temporary accommodation of their merchandise. But, now that the superior facilities exist for the transportation of merchandise, as respects the cost, the speed, and the security of its transport, this description of inn has fallen very much into disuse, except in remote or sparsely-settled districts. In cities and large towns, to which travellers journey by railroad or steamboat, inns, or, as they are commonly known in this country, hotels, are simply establishments for the reception of travellers accompanied merely with their ordinary baggage. The proprietors of such establishments, as they make no provision of the kind of accommodation that was afforded by the ancient inns, are under no obligation to receive a traveller with merchandise, and may, if they think proper, refuse to house or take care of it. But whatever may be the nature of the inn, or the kind of accommodation afforded, if the innkeeper receives the guest and his goods, he charges himself with their safe-keeping. The moment the goods are *infra hospitium*, the liability of the innkeeper attaches, and that liability extends to goods, chattels, and movables of any kind or description which the traveller brings with him. (*Calyes Case*, 8 *Coke*, 32; *Anthon's Law Student*, 55.)

The defendant, therefore, was chargeable with the safe-keeping of Forbes' portmanteau and all that it contained; and even if the defendant's liability extended no further than the care of the luggage of his guests, the money lost would come within what is usually known as baggage. Forbes was a traveller who had just arrived from Europe, having in his portmanteau $450 in foreign and American gold pieces, a sum which no court or jury could say was more than was necessary for his ordinary travelling expenses.

The plaintiff is entitled to judgment of $482.